FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 00 FEB 18 AM 9: 20
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| EDDIE NABORS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | |
| CAL ARK INTERNATIONAL, INC., | ) | 99-C-0914-S |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED

FEB 18 2000

## MEMORANDUM OPINION DENYING ALTERNATIVE
## MOTION TO DISMISS, QUASH, AND TO TRANSFER

This case arises out of a tragic multi-vehicle accident occurring on January 3,

1999, on Interstate Highway 81 in the Western District of Virginia (Rockbridge County,

Lynchburg Division). Plaintiff Eddie Nabors was seriously injured; his wife, Plaintiff Doris

Nabors was severely injured and suffers from serious brain damage. Their daughter and son

were killed in the accident. All of the Plaintiffs are, or at time of their death were, domiciled

in Alabama.

All of the Defendants are motor carriers and/or their drivers. Neither of them

is domiciled in Alabama.

The Defendants have moved to dismiss for want of personal jurisdiction and

improper venue. In the alternative, they have moved to transfer the case to the Western

69

District of Virginia, pursuant to 28 U.S.C. § 1404.

For the reasons which follow, all of the motions will be denied.

I

The court has diversity jurisdiction in this cause, pursuant to 28 U.S.C. § 1442, inasmuch as the citizenship of each of the Defendants is diverse to that of the Plaintiffs. The amount in controversy clearly exceeds $75,000.

The Defendant Star Transport, Inc., ("Star") does not controvert that the court has personal jurisdiction over it. Documents 6, 10, 12. The Defendant Celadon Trucking Services, Inc. ("Celadon") has not submitted evidence, by affidavit or otherwise, controverting the Plaintiffs' allegation of personal jurisdiction.

Although the Defendants Cal Ark International, Inc., ("Cal Ark") and R. C. Moore, Inc., ("Moore") deny that the court has personal jurisdiction over them, each concedes that it performs motor carrier services in the State of Alabama. Affidavit of Charles W. Reimer, ¶ 14; Affidavit of Steve Maziotti, ¶ 6. In the month following the accident, a Cal Ark tractor-trailer was observed on U.S. Highway near The Summit, a shopping mall near Birmingham, Alabama. Affidavit of Nancy L. Eady. Cal Ark has appointed an agent for service of process in Alabama, pursuant to Federal Motor Carrier Act, 49 U.S.C. § 13304(a)("MCA").[1]

---

[1] Given its admitted deliveries in the State of Alabama, it is unclear why Moore has not designated an Alabama agent pursuant to the MCA.

The court concludes that it has personal jurisdiction over Star, Cal Ark, Moore, and Celadon.

The Defendant Johnnie Sihan is the sole proprietor of DaBoyz Transportation Services. Sihan/DaBoyz is unquestionably a motor carrier operating in interstate commerce. Although Sihan has sworn under oath that "I have never had an agent in the State of Alabama," (Affidavit of Johnnie Sihan), he has in fact appointed Birmingham attorney James Porter as his agent for service of process in Alabama, pursuant to MCA. Document 19, Tab A.

Immediately following the accident, Sihan intentionally destroyed the most probative evidence on his company's contacts with the Northern District of Alabama - the driver's daily logs. The court infers that had these records not been destroyed, they would have shown that within the relevant period, Sihan's trucks made a substantial number of trips to or through the Northern District of Alabama.

II

The MCA requires motor carriers to "designate an agent *in each state in which it operates*...on whom process by a court with subject matter jurisdiction may be served in an action brought against that carrier...." *Id.* (emphasis added). By designating an Alabama lawyer as its agent for service of process in Alabama, Sihan/DaBoyz and Cal Ark consented to jurisdiction of courts in the Northern District of Alabama. *Ocepek v. Corporate Transport, Inc.,* 950 F.2d 556 (8th Cir. 1991); *Knowlton v. Allied Van Lines,* 900 F.2d 1196

(8th Cir. 1990); *Shapiro v. Southeastern Greyhound Lines*, 155 F.2d 135 (6th Cir. 1946);

*Sansbury v. Schwart*, 41 F.Supp. 302 (D.D.C. 1941); *Rounds v. Rea*, 947 F.Supp. 78

(W.D.N.Y. 1996); *Central Rigging and Contracting Corp. of Conn. v. J.E. Miller Transfer

and Storage Co.,* 199 F.Supp. 40 (W.D. Pa. 1961).

Because Sihan/DaBoyz and Cal Ark have consented to jurisdiction by

designating an agent for service of process in Alabama, the "minimum contacts" requirement

for *in personam* jurisdiction is obviated.[2]  But in any event, Sihan/DaBoyz would be

estopped for asserting a lack of personal jurisdiction based on his intentional destruction of

the crucial records bearing on that issue. *Insurance Corp. of Ireland Ltd. v. Compagnie des

Bauxites de Guinee*, 102 S.Ct. 2099 (1982).

## III

The Defendants argue that inasmuch as diversity of citizenship is the only

possible basis of jurisdiction in this case, 28 U.S.C. § 1391(a) renders venue improper in this

judicial district.  The cited section alternatively predicates venue on (1) the district of

residence of any of the defendants, (2) the district of occurrence of the act or omission giving

rise to the claim, or (3) the district which has personal jurisdiction of any of the Defendants.

As found earlier, each of the corporate Defendants is subject to personal jurisdiction in the

---

[2] By designating an agent for service of process in Alabama, Sihan must reasonably have anticipated doing business in this state and invoking the benefits and protections of its laws. Thus, his having been hauled into a federal court in Alabama, i.e., a surrogate Alabama court, can come as no surprise to him.  It certainly does not offend contemporary notions of fair play and substantial justice.

4

Northern District of Alabama. It follows that all of them are deemed to reside in this district. 28 U.S.C. § 1391(c).[3]

And since "venue is primarily a matter for the convenience of the litigants and witnesses," there is no reson why Johnnie Sihan d/b/a DaBoyz Transportation Service's lack of corporate status should put it beyond the reach of § 1391(c). *Denver and Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 87 S.Ct. 1746, 1748 (1967). In *Denver*, the Supreme Court interpreted and expanded Section 1391(c) to include unincorporated associations as well as corporations.

On the heels of *Denver*, and in a case binding on this court,[4] the Fifth Circuit held that "the expanded concept of corporate residence for venue purposes" under Section 1391(c) is fully applicable to partnerships:

> The problem comes down to the purely procedural question whether a multistate unincorporated business organization "resides" or has a "residence" for Jones Act venue purposes in a district in which it is doing business, but which is not the location of its principal office or the place where its owner-partners live. We answer this question in the affirmative. Since in that answer were draw directly on the Supreme Court's holding that corporate venue standards apply to give meaning to "residence" or similar concepts concerning unincorporated association, we are led to the subsidiary question whether for

---

[3] Section 1391(c) provides that for purposes of venue, a corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

[4] *Bonner v. City of Prichard*, 661 F.2d 1206, (11th Cir. 1981).

.

> venue purposes ... there can be any recognizable difference between the unincorporated partnership and the unincorporated association. That we answer in the negative.

*Penrod Drilling Company v. Johnson*, 414 F.2d 1217, 1220 (5th Cir. 1969).

In light of *Penrod*, for venue purposes in a case involving an interstate motor carrier, this court cannot perceive any legally cognizable difference between an unincorporated partnership and a sole proprietorship, such as Sihan.

The court concludes that venue is proper in this district.

IV

The court has carefully considered the Defendants' motion to transfer the case to the Lynchburg Division of the Western Division of Virginia. In so doing, it has considered the relevant factors under *Golf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947), *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 (1955), and the various public and private interests.

The Plaintiffs' choice of forum is heightened in this case because of the uncontroverted "severe emotional, financial, and physical hardship" for the Plaintiffs if the case is transferred to Virginia for trial. Document 38, Affidavit of Eddie Nabors.

The accident occurred in Virginia. Physical and documentary evidence is thus more easily accessible there than in the Northern District of Alabama. In the highly unlikely event that a judge deems appropriate a jury's view of the premises, the Eastern District of Virginia is more convenient. The law enforcement officials who investigated the accident and the medical personnel who rendered assistance and treatment to the victims are all

6

Virginia residents, and for such of them as may be called to testify, trial attendance would be more convenient in Virginia than in Alabama.[5]  On the other hand, if the case is tried in Alabama, their videotaped depositions could be taken in Virginia and shown to the jury.

Most likely, the seventeen drivers involved in the accident will be called to testify.  Five of these (Austin, Perez, Mulke, Mulkevitz, and Herman) live in Tennessee. Four of these drivers (Selfke, Causa, Druff, and Montano) are domiciled in Virginia.  Two (Booker and Vinis) live in Texas; a like number (Toy and Bestant) reside in California.  The remaining drivers live in either North Carolina (Fuller), Maine (Manchester), Pennsylvania (Alvis), and Alabama (the Plaintiff Eddie Nabors).  Exhibit 1 (Accident Report), Star Transport's Memorandum in Support of Motion to Dismiss or Transfer.  The court finds that for a third of these key witnesses, trial in Virginia would be more convenient; for the other two-thirds, a trial in Alabama would be more convenient.

The principal place of business of only one (R. C. Moore, Inc.) of the five corporate Defendants is closer to Virginia than Alabama.

While Virginia law would be applied in this case, there is no showing that this court would have difficulty in understanding and applying such law.

The court concludes that the Plaintiffs' choice of forum is not "clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir.1981);

---

[5]  It is the policy of the Virginia Department of State Police that its troopers will testify when subpoenaed for criminal and civil trials in cases they have investigated, whenever the trial is had.  Document 39, Affidavit of Albert M. Orgain, IV, Exhibit A.

*Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1966).

Conclusion

By separate orders, the motions to dismiss or transfer will be denied.


DONE this _____ day of February, 2000.

_____

UNITED STATES DISTRICT JUDGE

U. W. CLEMON